Slip Op. 10-56

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG TTCA BIOCHEMISTRY CO., LTD. et al., | |
| Plaintiffs, | Before: WALLACH, Judge |
| v. | Consol. Ct. No.: 09-00241 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ARCHER DANIELS MIDLAND CO. et al., | |
| Defendant-Intervenors. | |

[JBL Canada's Motion to Intervene as a Matter of Right is DENIED.]

Dated: May 14, 2010

Troutman Sanders LLP (Julie Clark Mendoza) for Plaintiffs Shandong Biochemistry TTCA Co., Ltd. et al.

James M. Lyons, General Counsel, Andrea C. Casson, Assistant General Counsel for Litigation, and Mary Jane Alves, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, for Defendant United States.

Sidley Austin, LLP (Neil R. Ellis) for Defendant-Intervenors Archer Daniels Midland Company, Cargill, Incorporated, and Tate & Lyle Americas LLC.

Vorys Sater Seymour and Pease LLP (Frederick P. Waite and Kimberly R. Young) for Proposed Plaintiff-Intervenor Jungbunzlauer Canada Inc.

# OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

Jungbunzlauer Canada Inc. ("JBL") seeks to intervene as a matter of right in the instant action. See Motion to Intervene as a Matter of Right ("JBL's Motion"). The action challenges material injury determinations by the U.S. International Trade Commission ("ITC") in antidumping and countervailing duty investigations of citric acid and certain citrate salts (together "citric acid") from the People's Republic of China ("China"). The action does not challenge the material injury determination by ITC in the antidumping duty investigation of citric acid from Canada. The court has jurisdiction pursuant to 19 U.S.C. § 1581(c).

JBL's Motion is DENIED. JBL is not an interested party to either of the investigations of citric acid imports from China even though it is an interested party to the investigation of citric acid imports from Canada. Accordingly, it cannot intervene in the instant action.

## II
## BACKGROUND

On April 14, 2008, three domestic producers of citric acid petitioned the U.S. Department of Commerce ("Commerce") and ITC for the imposition of antidumping duties on imports of citric acid from Canada and the imposition of both antidumping and countervailing duties on imports of citric acid from China. See Citric Acid and Certain Citrate Salts from Canada and the People's Republic of China: Initiation of Antidumping Duty Investigations, 73 Fed. Reg. 27,492, 27,492 (May 13, 2008) ("Notice of AD Investigations"); Notice of Initiation of Countervailing Duty Investigation: Citric Acid and Certain Citrate Salts from the People's Republic of China, 73 Fed. Reg. 26,960, 29,960 (May 12, 2008) ("Notice of CVD Investigation").

2

In response, ITC "instituted" an antidumping duty investigation of imports from Canada, an antidumping duty investigation of imports from China, and a countervailing duty investigation of imports from China. See Citric Acid and Certain Citrate Salts From Canada and China, 73 Fed. Reg. 21,650, 21,650 (April 22, 2008) ("ITC Notice of Investigations"). Commerce similarly "initiat[ed]" three investigations. See Notice of AD Investigations, 73 Fed. Reg. at 27,492; Notice of CVD Investigation, 73 Fed. Reg. at 26,960.[1]

Following affirmative determinations by Commerce, ITC proceeded to make a final determination as to material injury for each of the three investigations. See U.S. International Trade Commission, Citric Acid and Certain Citrate Salts from Canada and China, Investigation Nos. 701-TA-456 and 731-TA-1151-1152 (Final), Publication 4076 (May 2009) ("Final Report") at 1; see also 19 U.S.C. §§ 1671d(b), 1673d(b). In making these determinations, ITC considered three statutory factors:

> (I) the volume of imports of the subject merchandise, (II) the effect of imports of that merchandise on prices in the United States for domestic like products, and (III) the impact of imports of such merchandise on domestic producers of domestic like products . . . .

19 U.S.C. § 1677(7)(B)(i); see Final Report at 15-37. ITC considered these factors by "cumulatively assess[ing] the volume and effects of imports of the subject merchandise" from Canada and China. 19 U.S.C. § 1677(7)(G); see Final Report at 15.[2]

As a result of this cumulative assessment, inter alia, ITC determined that "an industry in the United States is materially injured by reason of imports from Canada and China of citric acid and certain citrate salts . . . that have been found by [Commerce] to be subsidized by the

---

[1] The use of the plural terms "investigations" and "determinations" in this Part is consistent with ITC usage and with the conclusions below. See infra Part IV.

[2] 19 U.S.C. § 1677(7)(G)'s cumulation provisions apply to only the first two factors. See 19 U.S.C. § 1677(7)(C)(i)-(ii), (G)(i). However, ITC appears to have used cumulation for the third factor as well. See Final Report at 32 ("Impact of the Cumulated Subject Imports on the Domestic Industry").

3

Government of China and to be sold in the United States at less than fair value (LTFV)." Final Report at 1 (footnote omitted). ITC announced these determinations in a single paragraph of a single publication. See id.

After receiving notification of ITC's determinations, Commerce issued two antidumping duty orders and one countervailing duty order. See Citric Acid and Certain Citrate Salts from Canada and the People's Republic of China: Antidumping Duty Orders, 74 Fed. Reg. 25,703, 25,703 (May 29, 2009) ("Notice of AD Orders"); Citric Acid and Certain Citrate Salts From the People's Republic of China: Notice of Countervailing Duty Order, 74 Fed. Reg. 25,705, 25,705 (May 29, 2009).

Plaintiffs brought the instant action challenging "the final affirmative injury determination of [ITC] concerning imports from China of citric acid . . . from [China]." Complaint, Docket No. 9, ¶ 1. "Plaintiffs are Chinese producers and exporters to the United States of citric acid from China." Id. ¶ 3.[3]

The Procter & Gamble Manufacturing Company ("P&G") brought a separate action challenging "the final affirmative injury determination by [ITC] in the antidumping and countervailing duty investigations of" subject merchandise from Canada and China. Complaint, Court No. 09-00242 Docket No. 8, ¶ 1. P&G is "an importer of [subject merchandise] from Canada." Id. ¶ 5.

In August 2009, the court consolidated these actions under Shandong Biochemistry TTCA Co. v. United States, Consol. Court No. 09-00241. See August 11, 2009 Order, Docket

---

[3] Plaintiffs are Shandong TTCA Biochemistry Co., Ltd., Yixing-Union Biochemical Co., Ltd., RZBC Group, Anhui BBCA Biochemical Co., Ltd., Weifang Ensign Industry Co., Ltd., Huanghsi Xinghua Biochemical Co., Ltd., Huozhou Coal Electricity Shanxi Fenhe Biochemistry Co., Ltd., A.H.A. International Co., Ltd., Laiwu Taihe Biochemsitry Co., Ltd., Gansu Xuejing Biochemical Co., Ltd., Hunan Dongting Citric Acid Chemicals Co., Ltd., Shihezi City Changyun Biochemical Co., Ltd., Jiali International Corp., Lianyungang Shuren Scientific Creation Imp & Exp Co., Ltd., Jiangsu Gadot Nuobei Biochemical Co., Ltd., and Changsha Glorysea Biochemicals Co., Ltd.

No. 18. Later that month, JBL, which describes itself as "the sole producer of citric acid in Canada," moved to intervene in the consolidated action. JBL's Motion at 1. In October 2009, the court dismissed P&G's action in response to a stipulation of dismissal filed by P&G. See October 1, 2009 Order of Dismissal, Docket No. 39.

III
STANDARD OF REVIEW

"On timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." USCIT Rule 24(a); see 28 U.S.C. § 2631(j)(1)(B). The court—not Commerce or ITC—determines this class of intervenors. See USEC Inc. v. United States, 27 CIT 489, 510, 259 F. Supp. 2d 1310 (2003) (subsequent history omitted).

IV
DISCUSSION

JBL cannot intervene in the instant action because it is not an interested party to either of the two investigations that produced the determinations challenged by this action. See infra Part IV.A. The exclusion of JBL from this action is further supported by the court's lack of jurisdiction over imports for which JBL seeks relief. See infra Part IV.B.

A
JBL Cannot Intervene Because It Is Not An Interested Party

JBL cannot intervene in the instant action because it is not an interested party to either of the two investigations that produced the determinations challenged by this action.

"[I]n a civil action under [19 U.S.C. § 1516a], only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may

5

intervene as a matter of right." 28 U.S.C. § 2631(j)(1)(B). "Interested party" includes "a foreign manufacturer, producer, or exporter . . . of subject merchandise." 19 U.S.C. § 1677(9); see 28 U.S.C. § 2631(k)(1).

"Subject merchandise" in this context means "merchandise which is the subject of the investigation." 19 U.S.C. § 1677(9) (1993). The 1994 Uruguay Round Agreements Act ("URAA") introduced the term "subject merchandise," defined it in relevant part as "the class or kind of merchandise that is within the scope of an investigation," and substituted it throughout the antidumping and countervailing duty statutes for variants of both "merchandise which is the subject of the investigation" and "class or kind of the merchandise which is the subject of the investigation." See 19 U.S.C. § 1677(25); Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994) ("SAA") at 820, reprinted in 1994 U.S.C.C.A.N. 4040, 4161 (characterizing these substitutions as a simplification of nomenclature); compare, e.g., 19 U.S.C. § 1673a(c)(2) (1993) and 19 U.S.C. § 1673d(a)(1) (1993) with 19 U.S.C. § 1673a(c)(2) (1995) and 19 U.S.C. § 1673d(a)(1) (1995).[4] Prior to its amendment by the URAA, 19 U.S.C. § 1677(9) referred to "merchandise which is the subject of an investigation" rather than "subject merchandise." 19 U.S.C. § 1677(9) (1993). This history clarifies that, for the purpose of defining "interested party," "subject merchandise" includes only that merchandise which is the subject of the investigation.

---

[4] The URAA approved the new World Trade Organization Agreement, and the agreements annexed thereto, "resulting from the Uruguay Round of multilateral trade negotiations [conducted] under the auspices of the General Agreement on Tariffs and Trade." 19 U.S.C. § 3511(a)(1). The SAA, which was submitted to and approved by Congress, see 19 U.S.C. § 3511(a)(2), is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and the [URAA] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

The key term in this definition is "investigation."[5] The antidumping and countervailing duty statutes do not define this term or otherwise specify the geographic scope of an investigation. See 19 U.S.C. §§ 1671-1677n.[6] However, they do demonstrate that a single investigation encompasses a component that is statutorily assigned to Commerce as well as a component that is statutorily assigned to ITC. See, e.g., 19 U.S.C. §§ 1673a (describing the initiation of an antidumping duty investigation), 1673b(a) (describing ITC's role in the preliminary phase of an investigation), 1673d(c)(2) (directing the termination of an investigation following a negative final determination by either Commerce or ITC). Moreover, they contemplate simultaneous investigations of the same type of product from different countries. In particular, the provision governing material injury determinations states that, if certain conditions are satisfied, ITC:

> shall cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which—(I) [antidumping or countervailing duty] petitions were filed . . . on the same day . . . or (III) [antidumping or countervailing duty] petitions were filed . . . and [antidumping or countervailing duty] investigations were initiated . . . on the same day . . . .

19 U.S.C. § 1677(7)(G)(i). This language requires ITC to cumulatively assess certain elements that are common to multiple investigations; <u>it does not require ITC (or Commerce) to cumulate the actual investigations</u>. Indeed, as Defendant notes, ITC:

> must first determine whether imports from any individual country are negligible (19 U.S.C. § 1677(24)) and whether imports should be cumulated for purposes of

---

[5] If a single antidumping duty investigation covers citric acid imports from both Canada and China, then JBL is an interested party to that investigation. However, if one antidumping duty investigation covers citric acid imports from Canada alone and another antidumping duty investigation covers citric acid imports from China alone, then JBL is an interested party only to the former and, as such, cannot intervene in the instant action. For the reasons identified in this Part, the antidumping duty investigation of citric acid imports from Canada is distinct from the antidumping and countervailing duty investigations of citric acid imports from China.

[6] The SAA is ambiguous with respect to the geographic scope of an investigation. Compare SAA at 810, 1994 U.S.C.C.A.N. at 4514 ("Article 3.3 expressly authorizes the longstanding U.S. practice of cumulating the impact of imports from multiple countries simultaneously subject to investigations") <u>with</u> SAA at 847, 1994 U.S.C.C.A.N. at 4181 ("[ITC] cumulatively assesses the volume and effect of imports from all countries subject to the investigation . . . .").

7

> its material injury analysis (19 U.S.C. § 1677(7)(G)); and even if [ITC] cumulate[s] imports that are the subject of different investigations from different countries for purposes of its present material [injury] analysis, if it reaches a negative present injury determination, it must then decide anew whether to cumulate imports as a discretionary matter (19 U.S.C. § 1677(7)(H)) for purposes of its threat of material injury analysis.

Defendant's Reply to JBL Canada's Response Regarding JBL Canada's Proposed Intervention at 6-7.

The material injury provision, which was part of the URAA, was drafted in the context of the existing administrative approach to an "investigation." Cf. generally SAA at 807-896, 1994 U.S.C.C.A.N. at 4151-4218 (explaining the URAA and proposed administrative action in relation to existing antidumping and countervailing duty law). Although Commerce and ITC do not define this term in their respective regulations, their longstanding practice was and is to limit each investigation to a single country and a single type of allegation (i.e., dumping or subsidization). See, e.g., Elkem Metals Co. v. United States, 24 CIT 1395, 1396, 126 F. Supp. 2d 567 (2000); Citizen Watch Co. v. United States, 14 CIT 173, 173, 733 F. Supp. 383 (1990); American Spring Wire Corp. v. United States, 8 CIT 20, 21, 590 F. Supp. 1273 (1984); City Lumber Co. v. United States, 61 Cust. Ct. 448, 453-54, 290 F. Supp. 385 (1968); see also U.S. International Trade Commission's Response to Motion of Jungbunzlauer Technology GmbH & Co. KG ("JBL Canada") to Intervene in This Proceeding ("Defendant's Response") at 9. But see U.S. International Trade Commission, Antidumping and Countervailing Duty Handbook (13th Edition), Publication 4056 (December 2008) at II-11 ("Then, each Commissioner announces his or her vote on the country(ies) involved in the investigation.").[7] Rather than alter this practice, Congress enacted a provision that is wholly consistent with it.

---

[7] The longstanding practice of Commerce and ITC is more persuasive than this potentially divergent characterization of such practice.

Commerce and ITC followed this practice with respect to citric acid imports from Canada and China. Commerce initiated, and ITC instituted, three distinct investigations. See Notice of AD Investigations, 73 Fed. Reg. at 27,492; Notice of CVD Investigation, 73 Fed. Reg. at 26,960, 29,960; ITC Notice of Investigations, 73 Fed. Reg. at 21,650.[8] As JBL acknowledges, Commerce segregated the investigations through "separate administrative protective orders, separate hearings, and separate notices of [its] preliminary and final determinations." Response of Jungbunzlauer Canada Inc. to the U.S. International Trade Commission's Opposition to JBL Canada's Motion to Intervene ("JBL's Reply") at 4 n.14. In contrast, as Defendant acknowledges, ITC "conducted concurrent investigations of, issued a single set of views explaining its determinations concerning, and for purposes of its material injury analysis even cumulated imports of [citric acid] from Canada and China." Defendant's Response at 13. Nonetheless, ITC did not combine—and could not have unilaterally combined—the three joint Commerce-ITC investigations. Rather, it combined its analysis and administration of certain elements within its portions of these investigations. ITC consistently identified the three individual investigations in its public notices, see ITC Notice of Investigations, 73 Fed. Reg. at 21,650, and ultimately announced multiple "determinations" in the Final Report, Final Report at 1.

Accordingly, for the purpose of deciding JBL's Motion, the court recognizes the administrative delineation of the citric acid investigations. The antidumping duty investigation of citric acid imports from Canada is statutorily distinct from the antidumping and countervailing duty investigations of citric acid imports from China.

---

[8] The three investigation numbers assigned by Commerce differ from the three investigation numbers assigned by ITC. Compare Notice of AD Investigations, 73 Fed. Reg. at 27,492 and Notice of CVD Investigation, 73 Fed. Reg. at 26,960, 29,960 with ITC Notice of Investigations, 73 Fed. Reg. at 21,650. Nonetheless, for statutory purposes, a single investigation encompasses both the Commerce component and the ITC component. See generally 19 U.S.C. §§ 1673a-1673d.

Plaintiffs challenge only ITC's determinations of material injury in the investigations of citric acid imports from China. See Complaint ¶¶ 1 ("This action is an appeal of the final affirmative injury determination of [ITC] concerning imports from China of citric acid . . . from [China]."), 3 ("Plaintiffs are Chinese producers and exporters of citric acid from China."). P&G's challenge to ITC's determination of material injury in the investigation of citric acid imports from Canada has been dismissed. See October 1, 2009 Order Dismissal, Docket No. 39.

JBL describes itself as "the sole producer of citric acid in Canada." JBL's Motion at 1. It has never claimed to be, or participated in the administrative proceedings as, a foreign manufacturer, producer, or exporter of citric acid from China. See JBL's Reply at 5 ("[JBL] is not seeking relief for imports from China. Rather, [JBL] is seeking relief, if warranted, with respect to imports from Canada."); Notice of AD Orders, 74 Fed. Reg. at 25,704. Accordingly, it does not qualify as an interested party to either investigation of citric acid from China and cannot intervene in the instant action.

**B
JBL Could Not Obtain Relief Even If It Could Intervene**

Because the court lacks jurisdiction over citric acid imports from Canada, JBL could not obtain the relief that it seeks even if it could intervene pursuant to 28 U.S.C. § 2631(j)(1)(B). The inability to obtain relief does not necessarily preclude a party from intervening. See NSK Corp. v. United States, 577 F. Supp. 2d 1322, 1328 n.1 (CIT 2008) (noting that the plaintiff-intervenors were "limited to seeking relief on orders covering ball bearings from the United Kingdom"); cf. Canadian Wheat Bd. v. United States, 637 F. Supp. 2d 1329, 1338-42 (CIT 2009) (concluding that a permissive intervenor does not need independent Article III standing).

10

However, this lack of jurisdiction further illustrates why an interpretation of "interested party" that excludes JBL is appropriate in the instant action.

"To establish the Court's jurisdiction over merchandise covered by a particular determination, a claimant must specify in its pleadings the individual determination that covers those entries . . . . [T]he fact that the ITC undertakes a review and cumulates merchandise from several countries to evaluate [the] aggregated effect on the domestic industry does not change a collection of individual injury determinations into a single determination for purposes of judicial review." NSK Corp. v. United States, 547 F. Supp. 2d 1312, 1319 (CIT 2008) (declining to enjoin the liquidation of entries from Italy and Germany because the plaintiffs' original complaint did not challenge ITC's sunset review injury determinations with respect to imports from these countries); see Chefline Corp. v. United States, 26 CIT 878, 878-80, 219 F. Supp. 2d 1303 (2002) (affirming remand determinations that were limited to Korea even though ITC had originally cumulated imports from Korea and Taiwan); Gerald Metals, Inc. v. United States, 22 CIT 1009, 1027, 27 F. Supp. 2d 1351 (1998) (affirming a remand determination that was limited to Ukraine even though ITC continued to cumulate imports from Ukraine, Russia, and China); see also Defendant's Response at 11-12 (discussing these cases).[9]

Plaintiffs in this action have challenged only ITC's final determinations of material injury in the investigations of citric acid imports from China. See Complaint ¶¶ 1, 3; 19 U.S.C. § 1516a(a)(2)(B)(i). Because they have not challenged ITC's final determination in the investigation of citric acid imports from Canada, the court lacks jurisdiction over these imports. See NSK Corp., 547 F. Supp. 2d at 1320.

---

[9] JBL argues that none of these decisions "addresses the issue before the Court – that is, whether the Canadian respondent can intervene in an appeal of [ITC's] final determination that cumulated imports from Canada and China have caused material injury to the domestic citric acid industry." JBL's Reply at 7. It would be surprising if these decisions addressed that specific issue. They instead demonstrate that this court exercises jurisdiction over only those imports that are covered by a determination that is specified in the pertinent complaint.

11

The involvement of merchandise from a free trade area country such as Canada, see 19 USC § 1516a(f)(10)(A), raises an additional jurisdictional consideration. A determination that is "made in connection with a proceeding regarding a class or kind of free trade area country merchandise" is generally reviewable "only if the party seeking to commence review has provided timely notice of its intent to commence such review" and "neither the United States nor the relevant [free trade agreement] country request[s] review by a binational panel." 19 U.S.C. § 1516a(g)(1), (3); see also 19 U.S.C. § 1516a(a)(5).

If ITC had made only one determination of material injury with respect to citric acid imports from Canada and China, then Plaintiffs would presumably have been required to comply with the special requirements of 19 U.S.C. § 1516a(g). Absent evidence that they had so complied, the court could not review that single material injury determination at all. In other words, rather than enabling JBL to seek relief with respect to imports from Canada, acceptance of JBL's argument could preclude Plaintiffs from seeking relief with respect to imports from China.

To invoke the court's jurisdiction over citric acid imports from Canada, JBL should have provided notice pursuant to 19 U.S.C. § 1516a(g)(3)(B) and then filed its own summons and complaint pursuant to 19 U.S.C. § 1516a(a). Because neither JBL nor any other interested party to the investigation of citric acid imports from Canada complied with these requirements, the court lacks jurisdiction over these imports.

# V
# CONCLUSION

For the reasons stated above, JBL's Motion is DENIED.

                         __/s/ Evan J. Wallach____
                         Evan J. Wallach, Judge

Dated: May 14, 2010
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: May 14, 2010      By: /S/ Geoffrey Goell
                              Deputy Clerk